IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 10-cv-01328-LTB-MJW

STEPHANIE SALAZAR,

                    Plaintiff,

vs.

CITY OF COMMERCE CITY;
GERALD M. FLANNERY, in his individual capacity;
PAUL NATALE, in his individual capacity;
HEATHER OLSON, in her individual capacity; and
TOM ACRE, in his individual capacity,

                    Defendants.

_____

ORDER
_____

This matter is before me on Defendants' Motion & Brief in Support of Summary Judgment [**Doc #46**] filed by Defendant City of Commerce City (the "City"), and Defendants Gerald M. Flannery, Paul Natale, Heather Olson, and Tom Acre, in their individual capacities. Defendants seek dismissal of the claims filed against them by Plaintiff, Stephanie Salazar. Oral arguments will not materially aid in the resolution of this motion. After consideration of the parties' briefs, and for the reasons stated below, I GRANT IN PART AND DENY IN PART the motion as follows.

## I. Background

In August of 2005, Plaintiff was hired by the City to be its Economic Development Director. In November of 2006, Plaintiff was provided a performance review in the form of a

memorandum by her supervisor, the Acting Assistant City Manger, Roger Tinklenberg. [Doc #

45, Ex. H]  At that time she was taken off probationary status and given a salary increase.

Thereafter, on November 20, 2006, Plaintiff sent a "strictly confidential" document to

Defendant Paul Natale – who was then a Council Member and later elected Mayor of Commerce

City – in which she discussed the "internal barriers to economic development initiatives for the

city," and complained about several current and former City employees. [Doc # 45, Ex. J, Doc. #

58 Ex. N]  While this document contains allegations of general workplace "harassment" of the

Economic Development staff, it does not make specific allegations of gender or national origin

discrimination.

Following her annual performance evaluation in the Fall of 2007, Plaintiff wrote a

lengthy response to Defendant Gerald Flannery, the City Manager, dated December 21, 2007,

indicating that she did not agree with the evaluation results. [Doc # 45, Ex. P, Doc # 57, Ex. W]

Plaintiff concedes that this response was not a "formal complaint of discrimination" under the

policies of the City, but asserts that it complained of "gender bias" by alleging unequal treatment

between female and male managers at the City. [Doc # 57, Ex. W, pp. 27-31]  In addition, she

contends that she specifically opposed the treatment of a Hispanic employee (Building Official

Leonard Lucero) by the City after he complained of discrimination [Doc #57, Ex. W, pp. 13, 28,

34, 42], and notes a local media attack with "racial sentiment" on a development of a Spanish

market in the City, and repeated use of her own Spanish surname therein. [Doc #57, Ex. W, pg.

45]  Defendants maintain that this document did not make a specific allegation that Plaintiff

herself had been the subject of gender or national origin discrimination or retaliation by the City,

but because it referenced the City's discrimination policies Defendant Heather Olson (now

2

known as Heather Spenser), the Human Resources Director for Commerce City, conducted an

investigation.  [Doc # 45, Ex. U, V &Y]  On March 6, 2008, Defendant Olson concluded that

there had been no policy violations. [Doc # 57, Ex. CC]

During this time, Plaintiff submitted a report to the City Council and Defendant Mayor

Natale entitled "Report to Council on the Status of the Department of Economic Development"

on January 7, 2008. [Doc # 45, Ex. Z, Doc # 57, Ex. AA]  This report – which again related to the

disfavored treatment of Plaintiff and the Economic Development Department – alleged that on

November 9, 2007, Defendant Flannery made derogatory comments about Navajo people in

general and about Lisa Wayne, a Navajo women who had been hired by Plaintiff. [Doc # 57, Ex.

AA, pp. 4-5]  Plaintiff also alleged that Mr. Tinklenberg and Gregg Clements – when acting as

City Managers – had discriminated against minority employees; specifically, she alleged that they

attempted to terminate Leonard Lucero "a Spanish surnamed employee of over 22 years with the

City."  [Doc # 57, Ex. AA, pg. 6]  She again noted that she had been disparaged based on her own

Spanish surname in media reports related to development of a Spanish market.  [Doc # 57, Ex.

AA, pg. 6]  In response, the City hired Bob Bowman, a human resources consultant, to investigate

the alleged comments made by Defendant Flannery about Navajo people related to Ms. Wayne.

[Doc # 45, Ex. A-3, Doc # 58, Ex. EE]  In April 2008, Mr. Bowman concluded that Defendant

Flannery "may have made reference to Ms. Wayne's cultural heritage, but the there was no

discrimination or harassment involved." [Doc # 45, Ex. A-3, pg.2]

In March and April of 2008, Plaintiff allegedly withheld business information about the

City from Defendant Flannery, who was at that point her supervisor.  As a result, she received a

written reprimand from him on April 4, 2008.  [Doc # 45, Ex. A-9, Doc # 57, Ex. FF]  Also at that

time Defendant Tom Acre, the Deputy City Manager, became her supervisor. [Doc # 58, Ex. D, pg. 153] Plaintiff responded to the reprimand by submitting a "Grievance Against Flannery and Acre" to the Human Resources Department, dated April 18, 2008, in which she complained that the reprimand was unwarranted and retaliatory.  [Doc # 45, Ex. A-13, Doc # 57, Ex. MM]

The City investigated Plaintiff's Grievance by hiring an employment attorney, Marilee Langhoff.   In her report dated June 22, 2008, Ms. Langhoff addressed the Grievance by grouping Plaintiff's alleged complaints into: 1) violations of the City's Employment and Performance Evaluation Guidelines related to "Problem Solving;" 2) violations of the City Handbook prohibitions against "Discrimination & Harassment" and "Work Place Violence;" and 3) actions contrary to the job description of the Director of Economic Development.  [Doc # 45, Ex. A-16, Doc # 57, Ex. QQ]  After finding no violations, the report concluded that "[i]n sum, despite her extensive litany, I do not find that Ms. Salazar's Grievance has merit or is worthy of any additional response or examination either internally or externally" and "[f]or various reasons, it is my opinion that at this juncture Ms. Salazar's behavior has become a serious disruption in the workplace . . .".  [Doc # 57, Ex. QQ, pg. 7]

Plaintiff was subsequently notified that she would be terminated from her employment in a letter from her supervisor, Defendant Acre, dated July 2, 2008. [Doc # 45, Ex. A-20]   The letter of termination indicated that "[a]lthough no reason must be given for the City's decision" based on her at-will status, it noted her unprofessional behavior in the past months, her continued "inability to work as part of the City team," her "inability to communicate effectively with [her] department," and Defendant Acre's concern about her judgment as evidenced by her keeping information confidential from the City Manager.  The letter also relied upon her "extraordinarily

4

lengthy, confrontational responses to comments made regarding her performance," which alleged

serious wrongdoings, but she then "refused to participate in the investigation."  The letter

concluded that "I do not believe your work style, behavior and recent actions fit the needs of the

City and your recent conduct has been quite problematic."  [Doc # 45, Ex. A-20]

Plaintiff subsequently filed this lawsuit in which she asserts claims for Discrimination and

Retaliation against the City in violation of Title VII, 42 U.S.C. § 2000e, *et seq.* (First Claim for

Relief), as well as claims for Discrimination and Retaliation against all Defendants in violation of

42 U.S.C. §1981 (Second Claim for Relief).  She also brings claims against all Defendants

pursuant to 42 U.S.C. § 1983 for Violation of her 14th Amendment Right to Equal Protection

Based upon Gender (Third Claim for Relief), and Abridgement of her First Amendment Right to

Freedom of Speech and Association (Fourth Claim for Relief). [Doc # 18]

## II. Standard of Review

The purpose of a summary judgment motion under Fed. R. Civ. P. 56 is to assess whether

trial is necessary.  *White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995).  Fed. R. Civ. P.

56(c) provides that summary judgment shall be granted if the pleadings, depositions, answers to

interrogatories, admissions, or affidavits show that there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law.  The non-moving party has the burden

of showing that there are issues of material fact to be determined. *Celotex Corp. v. Catrett*, 477

U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

If a reasonable juror could not return a verdict for the non-moving party, summary

judgment is proper and there is no need for a trial.  *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at

323.  The operative inquiry is whether, based on all documents submitted, reasonable jurors could

find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, summary judgment should not enter if, viewing the evidence in a light most favorable to the plaintiff  and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for the plaintiff. *Id.* at 252; *Mares v. ConAgra Poultry Co.,* 971 F.2d 492, 494 (10th Cir. 1992).

### III.  Title VII Claims

The City argues that Plaintiff's Title VII claims against it should be dismissed.  It first asserts that even if she can meet her burden to prove a *prima facie* case of gender discrimination, the City can proffer several nondiscriminatory reasons for her termination (as the challenged employment action), and there is no disputed issue of material fact supporting Plaintiff's burden to prove that the proffered reasons were merely pretextual.  The City also argues that Plaintiff cannot make out a *prima facie* case of discrimination based on national origin in that it is undisputed that she is not a minority.  Finally, with regard to her retaliation claim, the City asserts that Plaintiff cannot prove such claim in the she did not engage in a protected activity that, in turn, was casually connected to an adverse employment action.

**A.  Gender Discrimination:**

To establish an inference of Title VII discrimination from circumstantial evidence, the court follows the burden shifting test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).  First, the plaintiff must establish a *prima facie* case of employment discrimination.  Next, the defendant must articulate a legitimate

nondiscriminatory reason for its employment decision.  Finally, the burden shifts back to the plaintiff to show that the stated nondiscriminatory reasons are mere pretext.  *Id.*

As an initial matter, I note that to the extent the City argues that Plaintiff's claim of gender discrimination based on disparate treatment is untenable – by pointing to the high percentage of female employees at the City (including Directors), the fact that Plaintiff's position (both before and after she was employed at the City) was held by women, and that her claim that Defendant Natale made derogatory statements against women is undermined by the fact that Plaintiff confided in him and he was not involved in City personnel decisions – such arguments go to the weight of Plaintiff's discrimination claim.

However, for the purpose of this motion, the City does not challenge that Plaintiff can make out a *prima facie* case of gender discrimination.  Rather, the City contends that Plaintiff cannot meet her burden to show a disputed issue of material fact that the nondiscriminatory reasons for her termination were pretextual.  The City's position is that Plaintiff was terminated because she was confrontational, unable to work with others, and that she violated City policies. The reasons set forth in her letter of termination include:  her recent unprofessional behavior; her inability to work as part of the City team and to communicate effectively with her department; her supervisor's concern about her judgment; and her lengthy, confrontational responses to comments made regarding about her performance, in which she made serious allegations while refusing to participate in the related investigations, and which alleged specious and frivolous complaints. These non-discriminatory reasons for termination are supported by evidence in the record.  *See Elmore v. Capstan, Inc.,* 58 F.3d 525, 530 (10th Cir. 1995); *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992)(the defendant's burden is merely to articulate through some proof a

facially nondiscriminatory reason for the termination; the defendant does not at this stage of the proceeding need to litigate the merits of the reasoning, nor does it need to prove that the reason relied upon was bona fide, nor does it need prove that the reasoning was applied in a nondiscriminatory fashion).

To show pretext, a plaintiff must demonstrate that the defendant was more likely motivated by a discriminatory reason, or that its proffered reason "is unworthy of credence." *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1167 (10th Cir. 2000). Pretext may be shown "by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Rivera v. City & County of Denver*, 365 F.3d 912, 925 (10th Cir. 2004)(citations omitted). "[T]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Young v. Dillon Companies*, 468 F.3d 1243, 1250 (10th Cir. 2006).

In support of her contention that her termination was actually improperly motivated by her gender, Plaintiff refers to the City's "pattern of sex discrimination" leading up to her termination – as evidenced by Defendant Natale's alleged statements against women, Defendant Flannery's termination of a female director a month after he became City Manager and his demotion of two other female mangers, and Plaintiff's negative evaluation that relied in part on her conflict with a male manager. To the extent that Plaintiff argues, in a footnote of her response brief, that this evidence supports a Title VII claim for hostile work environment, I note that such claim was not included in the parties' Final Pretrial order which merged the pleadings herein and controls the

course of this action and trial. [Doc # 63]  *See Hullman v. Board of Trustees of Pratt Community College*, 950 F.2d 665, 668 (10th Cir. 1991)(ruling that an order entered pursuant to Rule 16(e) supersedes the pleadings and controls the subsequent course of litigation).  Moreover, such evidence, even when viewed in the light most favorable to Plaintiff, does not amount to a "pattern of sex discrimination" leading to Plaintiff's termination.  Contrary to her argument, I find that this evidence fails to support a determination that her termination was "more likely" motivated by her gender than the non-discriminatory reasons articulated by the City.

Plaintiff also argues that the reasons given in support of her termination are unworthy of credence in that the specific incidents cited in her termination letter were "never investigated" or brought to Plaintiff's attention in order to be responded to.  She also asserts that one of the incidents took place several years ago, and that Defendant Acre could not recall in his deposition who had made the allegations. [Doc # 58, Ex G. pg. 238]  Although she concedes that she was aware of her April 2008 written reprimand, she maintains – without further argument – that it was "purely pretextual" because it occurred on the same day that Defendant Acre became her new supervisor.  Plaintiff also relies on opinions of co-workers that she was performing well.  For example, Plaintiff refers to her initial performance review in November of 2006, when Tinklenberg noted that Plaintiff had the "potential to be a star for the City" [Doc # 57, Ex. B, pg. 2], and an affidavit from a former City employee that through August of 2006 it was his opinion that Plaintiff was intelligent and articulate, and she was "very effective" and "extremely professional." [Doc # 58, Ex. F, pg. 4]  Plaintiff also relies upon evidence from co-workers in other departments that she seemed to be a good supervisor [Doc # 57, Ex. I, pp. 19-20] and she was positive, professional, and reasonable to deal with. [Doc # 58, Ex. KK, pg. 5]

The evidence Plaintiff relies upon, however, does not undermine or question the non-discriminatory reasons given by the City for her termination.  Nor does it infer pretext for the purpose of gender discrimination.  *See Holopirek v. Kennedy and Coe, LLC.,* 303 F.Supp.2d 1223, 1240 (D.Kan. 2004)(finding that even if true, the evidence is simply not relevant to the issue of whether the plaintiff was terminated based on her gender).  When viewing this evidence in Plaintiff's favor, I conclude that it is insufficient to met her burden to show a genuine issue of material fact whether the reasons given for her termination could be found by a jury to be pretextual for gender discrimination.

Thus, having failed to come forward with evidence that the proffered reasons for terminating her employment were a pretext for gender discrimination, Plaintiff cannot withstand the City's motion for summary judgment on this claim.

## B.  National Origin Discrimination:

The City next argues that Plaintiff cannot make out her *prima facie* case of Title VII discrimination based on national origin because it is undisputed that Plaintiff is not a minority by birth or heritage.  To establish a *prima facie* case for discriminatory discharge based on national origin, a plaintiff must first establish that she was of a protected national origin; second, she must show that she was qualified to perform the job from which she was removed; and third, she must establish that she was discharged under circumstances giving rise to an inference of discrimination.  *Metoyer v. State of Kan.,* 874 F.Supp. 1198, 1202 (D. Kan. 1995)(citations omitted).

Plaintiff concedes that she cannot allege that she was directly subjected to national origin discrimination, but instead contends that she was terminated based on "her association with

members of a protected class."  Specifically, she contends she was discriminated against based on her Hispanic surname from her husband (Frank Salazar), her hiring of a Native American employee (Lisa Wayne), and her advocacy for a Hispanic employee (Leonardo Lucero).  I note that the case law from the Tenth Circuit supporting a Title VII claim for national origin discrimination based on association – as opposed to direct discrimination of the charging party – is minimal, at best.  *See Reiter v. Center Consol. School Dist. No. 26-JT*, 618 F.Supp. 1458, 1460 (D.C. Colo. 1985), *overruled on other grounds by Drake v. City of Fort Collins,* 927 F.2d 1156, 1162 (10th Cir. 1991)(finding no "Tenth Circuit decisions that discuss whether Title VII prohibits discriminatory employment practices based on an individual's association with people of a particular race or national origin").  Nonetheless, I agree with the City that the relationships alleged by Plaintiff are insufficient, as a matter of law, to meet her *prima facie* burden of national origin discrimination by association.

Plaintiff's evidence that she was discriminated against by anyone at the City based on her Spanish surname or her association with her husband is limited to her subjective impression that he was snubbed by City officials at a single social event. [Doc # 57, Ex. WW, pp. 45, 61-4]  To the extent she maintains discrimination against her related to media accounts about the possible development of a Spanish market, she does not allege any involvement by City officials.  [Doc # 58, Ex. N, pg. 12, Doc # 57, Ex. W, pg.45]   In addition, although she did accuse the City of discriminatory actions toward Ms. Wayne and, perhaps, Mr. Lucero, she did not allege or assert any direct racial discrimination against her based on these relationships; rather, her claim is that she was retaliated against for complaining of such discrimination, as discussed below.  I conclude that, even when viewed in her favor, Plaintiff's evidence is insufficient, as a matter of law, to

11

make out a *prima facie* case that she was subjected to direct national origin discrimination, or discrimination based on association.   The City is entitled to summary judgment on Plaintiff's Title VII claim for national origin discrimination.

## C. Retaliation:

With regard to her claim of Title VII retaliation, the City asserts that Plaintiff cannot show that she engaged in protected activity and, moreover, that she cannot show that any such activity caused her termination.  And, even if she is able to make out her *prima facie* case of discriminatory retaliation, she cannot meet her burden to show evidence that the reasons offered by the City for her termination are merely pretextual.

In order to prove a retaliation claim, the shifting burden analysis of *McDonnell Douglas v. Green* applies.  *See Kelley v. Goodyear Tire and Rubber Co.*, 220 F.3d 1174, 1179 (10th Cir. 2000).  The plaintiff bears the initial burden of proving a *prima facie* case by showing that:  (1) she engaged in a protected opposition to discrimination or participated in a proceeding arising out of the discrimination, (2) the defendant took an adverse action against her after the protected activity, and (3) a causal connection exists between her activity and the adverse action.  *Griffith v. State of Colo., Div. of Youth Services*, 17 F.3d 1323, 1331 (10th Cir. 1994).  If the plaintiff establishes a *prima facie* case, then the defendant must articulate, and support with some evidence, a legitimate, nondiscriminatory reason for the discharge.  *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1403 (10th Cir.1997).  If it meets this burden, the plaintiff must then present evidence raising a genuine issue that the reasons offered for her termination are pretextual.  *Id.*

Plaintiff first argues that she "repeatedly" engaged in protected activity.  For purposes of Title VII retaliation claims, as relevant here, protected activity is defined as opposing any practice made unlawful under Title VII.  42 U.S.C.2000e-3(a); *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002).  To be protected, the opposition must be against a "practice made an unlawful employment practice by Title VII."  *Zokari v. Gates*, 561 F.3d 1076, 1081 (10th Cir. 2009)(*quoting Petersen v. Utah, supra,* 301 F.3d at 1188).  "Although no magic words are required to qualify as protected opposition, the employee must convey to the employer his or her concern that the employer has engaged in [an unlawful] practice."  *Hinds v. Sprint/United Management Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008)(*citing Anderson v. Academy School Dist.,* 20, 122 Fed. App'x. 912, 916 (10th Cir. 2004)(unpublished opinion)).

Plaintiff asserts that she engaged in protected activity by opposing discrimination in her various responses and complaints to the City.  First, she refers me to her December 21, 2007 response to her performance review in which Plaintiff argues that she opposed discrimination when "alleging that [her] evaluation was an example of disparate treatment based on gender" by arguing that she was criticized for conflict with the City's Planning Department which, in fact, was created primarily by male managers. [Doc # 57, Ex. W, pg. 28]  The response also raised allegations that both she and another female manager had been the subject of "gender bias against female managers and favored gender status of male managers." [Doc # 57, Ex. W, pg. 30]  My review of this lengthy document – which specifically indicates is not to be construed as a complaint, and is to be kept confidential – is that it contains a large number of charges against both male and female employees. [Doc # 46, Ex. A, pp. 105-06]  The clear purpose of the response is Plaintiff's assertion that her performance evaluation was the product of the disfavored

status of the Economic Development Department.  However, Plaintiff does allege, at the minimum, claims of discrimination against other employees.

Next, in her written report to the City Council dated January 7, 2008, Plaintiff alleged – in a section titled "Discrimination Against ED Staff by CM Flannery" – that her employee Lisa Wayne, a Native American, had been subjected to "obvious racial discrimination" when Defendant Flannery made racially derogatory comments about Navajo people. [Doc # 57, Ex. AA, pp. 3-5]  She also asserts that the City discriminated against minorities, as evidenced by the treatment of Hispanic employee Mr. Lucero, and she indicated that "it is reasonable to fear [Flannery's] reprisals if I were to file a complaint of discrimination ...". [Doc # 57, Ex. AA, pg. 6]  Although the report again specifically indicates that it is not a complaint, and must kept confidential, Plaintiff clearly alleges and opposes discriminatory conduct.  Plaintiff also relies on her April 18, 2008 Grievance that she filed with the City's Human Resources Department, which alleged that the written reprimand was taken "in retaliation against me." [Doc # 57, Ex. MM, pg. 27]

Finally, Plaintiff refers to a memo she wrote to Defendant Natale, dated May 21, 2008, responding to the fact that Defendant Flannery had been cleared of any wrongdoing related to his comments about Navajo people by the Bowman investigation, which concluded that there was no discrimination or harassment involved in his reference to Ms. Wayne's cultural heritage.  [Doc # 45, Ex. A-5, Doc # 57, Ex. N]  Plaintiff took issue with the investigation results by alleging a pattern discrimination; specifically, that "Mr. Flannery's employment discrimination based on race, color and national origin is not an isolated incident, as his bigoted practices also include a pattern of gender discrimination in personnel and employment matters. Mr. Flannery

14

discriminates against classes of individuals in their employment with the City." [Doc #57, Ex. NN, pg. 8]

I agree with the City that Plaintiff's various documents consisted primarily of generalized complaints against senior management at the City, and often specifically indicated they were not to be construed as "complaints." However, I find that Plaintiff has alleged discrimination in these documents sufficient enough to met her burden to show that she engaged in some protected activity by opposing discrimination under Title VII. *Compare Anderson v. Academy Sch. Dist. 20*, *supra*, 122 Fed. App'x at 916 ("vague reference to discrimination and harassment without any indication that this misconduct was motivated by [an improper criteria] does not constitute protected activity and will not support a retaliation claim"), *with McMillin v. Foodbrands Supply Chain Services, Inc.*, 272 F.Supp.2d 1211, 1219 (D.Kan. 2003)(concluding that a plaintiff's informal statements that she was being treated unfairly because she was a woman sufficiently conveyed her concerns that Defendant was acting in an unlawful discriminatory manner when the evidence in viewed in the light most favorable to the plaintiff).

To make out her *prima facie* case, Plaintiff must also show a causal connection between her protected activity and her termination. "A causal connection may be shown by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 2001)(*quoting Burrus v. United Tel. Co. of Kan., Inc.*, 683 F.2d 339, 343 (10th Cir. 1982)) The Tenth Circuit has "held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation." *O'Neal v. Ferguson, supra,* 237 F.3d at 1253 (*quoting Anderson v. Coors Brewing, Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999)). However, the

15

Tenth Circuit has refused to recognize a presumption of causation in cases where the adverse actions were taken as few as three months after the protected activity. *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1051 (10th Cir. 2011).

Plaintiff asserts that she can show a causal connection by temporal proximity.  She relies on the May 21, 2008 memo she wrote to Defendant Natale, in which she alleged that Defendant Flannery's "bigoted practices also include a pattern of gender discrimination in personnel and employment matters." [Doc #57, Ex. NN, pg. 8]  After sending this letter, Plaintiff was terminated approximately six weeks later, on July 2, 2008.  The City maintains that Plaintiff's May 21, 2008 memorandum was only responsive to the investigation results, and did not raise any new issue or make any specific claims of discrimination.  The City further argues that in order to show causation Plaintiff must rely on her only specific claim of discrimination – contained in her January 7, 2008 Report to City Council regarding Defendant Flannery's alleged racial comments related to Ms. Wayne and her Navajo heritage – as the relevant protected activity.  Because that activity occurred six months prior to her termination, the City argues that she cannot establish causation.

However, regardless of whether the generalized allegation made in Plaintiff's May 21, 2008, memorandum is sufficient activity to establish causation based on timing, I find that Plaintiff has offered additional evidence in order to met her *prima facie* burden.  *See O'Neal v. Ferguson, supra,* 237 F.3d at 1253 (finding that when there is no close temporal proximity between the protected activity and the alleged retaliatory conduct, the plaintiff may offer additional evidence to establish causation).  Specifically, Plaintiff's termination letter – which cites to her "extraordinarily lengthy, confrontational responses to comments made regarding your

performance" in which she "made serious allegations against the City" that were described as "repetitive" and "without merit" – constitutes additional evidence of causation. [Doc. #45, Ex. A-20]  In so doing, I reject the City's argument to the extent it maintains that Plaintiff's termination letter (and the reasons therein) are not relevant because she was an at-will employee. I conclude that this is sufficient evidence, when viewed in favor of Plaintiff, for a reasonable jury to find causation and, thus, Plaintiff has made out her *prima facie* case of retaliation.

As discussed above, I have determined that the City has met its burden to articulate legitimate non-retaliatory reasons for Plaintiff's termination.  *See Fye v. Oklahoma Corp. Comm'n*, 516 F.3d 1217, 1228 (10th Cir. 2008)("[e]stablishing a legitimate, nondiscriminatory reason is a burden of production and can involve no credibility assessment")(*quoting Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000)). Thus, the burden shifts to Plaintiff to show that the non-discriminatory reasons given by the City for her termination were pretext for retaliation.

In order to show that the reasons were pretextual for retaliation, Plaintiff  relies on deposition testimony in which Defendants Flannery and Acre described their reactions to her various allegations and complaints as being disappointed, upset, saddened, distraught, hurt and shocked, and Defendant Flannery's testimony that he could have felt a "tinge of anger" when she accused him of making discriminatory racial comments about Navajo people.  [Doc # 58, Ex. D, pp. 96, 99, 114-117, 120-22, 186, 192, 206 & Ex. H, pg. 175]  Defendant Natale testified that Defendant Flannery was not angry, but was upset because he believed Plaintiff's accusations were a misrepresentation. [Doc # 58, Ex. G, pg. 164]  Defendant Flannery also testified that Plaintiff's various complaints "eroded his trust" in her. [Doc # 58, Ex. D, pg. 206]

Plaintiff also relies upon language in her termination letter for evidence that her termination was actually retaliatory for her various complaints.  [Doc # 45, Ex. A-20]  Specifically, the termination letter stated as follows:

> Finally, during the last several months you have submitted extraordinarily lengthy, confrontational responses to comments made regarding your performance.  For instance, in response to your 2007 evaluation, in which you received a successful rating, you filed a response which was more than 50 pages long.  In this response you made serious allegations against the City, yet you refused to substantiate the allegations and you refused to participate in an investigation into the allegations contained in your response.  It is completely unproductive to allege wrongdoing and then refuse to participate when the City takes your allegations seriously and investigates them.  Further, it is even more unproductive to criticize the City for investigating your allegations.  It seems that any discussion about your performance, regardless of the content, causes you to lash out in a negative and unprofessional manner.  As another example, in response to the City Manager's April reprimand, you filed an 8-page response which contained "specious" and "frivolous" complaints.  Indeed, some of the complaints were so frivolous that the independent investigator noted that they "raise a question as to whether they were made in good faith or solely to disrupt the City's operations." It was also noted that your recent behavior has "become a serious disruption in the workplace."  The City takes all complaints seriously, as is evidence by the significant money, and immeasurable staff time, spent investigating complaints you have raised.  The problem is not the fact that you voiced concern, as the City specifically has policies in place to allow employees to raise concerns.  What is problematic is how you have handled yourself and the fact that your complaints have been illogical and repetitive, and all have been found to be without merit.  This type of behavior is disruptive and has led to a neutral third party concluding that you have not been acting in good faith.  [Doc # 45, Ex. A-20, pg. 3]

To the extent that Plaintiff argues that the termination letter knowingly misstates that her complaints were without merit, I note that employees may maintain retaliation claims based only on a "reasonable good-faith belief that the underlying conduct violated Title VII."  *See Board of County Comm'rs, Fremont County v. U.S. EEOC*, 405 F.3d 840, 852 (10th Cir. 2005).

While the letter specifically indicates that "[t]he problem is not the fact that you voiced concern," but rather "how you have handled yourself and the fact that your complaints have been

illogical and repetitive, and all have been found to be without merit," I agree with Plaintiff that this language in the letter supports an inference by a jury that her termination was actually retaliatory for her discrimination complaints. As a result, Plaintiff has come forward with evidence of material issues of fact sufficient for a reasonable juror to find that the reasons given for her termination were false. And, as such, Plaintiff's claim for retaliation under Title VII against the City survives summary judgment.

### IV. Discrimination and Retaliation under §1981

Plaintiff also asserts a claim of national origin employment discrimination and retaliation under 42 U.S.C. §1981. Plaintiff's §1981 claims are raised against the City, as well as the other Defendants in their individual capacities.

In order to prove discrimination within the meaning of §1981, a plaintiff must prove that she was discriminated against on the basis of his or her ancestry or ethnic characteristics and not solely on the place or nation of her origin. *Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 10 S.Ct. 2022, 95 L.Ed.2d 582 (1987). Plaintiff's evidence of national origin discrimination – which is based on her claims of association and not based on her own national origin or race – is untenable and insufficient as a matter of law to make out a §1981 claim, as discussed above. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1175 (10th Cir. 2004)(*quoting Drake v. City of Fort Collins*, *supra*, 927 F.2d at 1162 ("[t]he elements of a plaintiff's case are the same . . . whether that case is brought under § 1981 or Title VII").

However, an employee who believes that he or she has been retaliated against because of her efforts to vindicate the rights of a minority co-worker may bring an action against her employer under §1981. *Twigg v. Hawker Beechcraft Corp.,* 659 F.3d 987, 997-98 (10th Cir.

2011)(citations omitted).  "The showing required to establish retaliation is identical under §1981 and Title VII." *Id. (quoting Roberts v. Roadway Express, Inc.,* 149 F.3d 1098, 1110 (10th Cir. 1998)).  As discussed, I have determined that Plaintiff has met her *prima facie* burden under Title VII to prove that she was terminated by the City for making complaints of racial discrimination against others.

The City argues that in order for municipal liability to arise under §1981, a plaintiff must demonstrate that the City's officials acted pursuant to a "policy" or "custom" of discriminatory employment practices. *Carney v. City and County of Denver,* 534 F.3d 1269, 1276 (10th Cir. 2008)(citations omitted).  It further asserts that Plaintiff has not alleged nor established there is a City policy or custom which indicates that engaging in discrimination based upon national origin is acceptable.   However, an unconstitutional deprivation is caused by a municipal policy "if it results from decisions of a duly constituted legislative body or an official whose acts may fairly be said to be those of the municipality itself." *Id. (citing Marshall v. Columbia Lea Reg'l Hosp.,* 345 F.3d 1157, 1177 (10th Cir. 2003)).  Because Plaintiff has alleged and produced evidence that Defendant Flannery – in his position as City Manager – was a decision maker in her termination, I find his alleged acts constitute an official municipal policy for which municipal liability may be impose against the City on summary judgment. *See Melton v. City of Oklahoma City*, 879 F.2d 706, 723 (10th Cir. 1989)(ruling that when the City Manager is the "final policymaking authority" over employment decisions affecting City personnel, §1983 liability attaches to the City based on a termination that was "expressly approved" by the City Manager), *vacated on other grounds*, 928 F.2d 920 (10th Cir. 1991)(*citing City of St. Louis v. Praprotnik,* 485 U.S. 112, 123, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988)).

20

The individual Defendants also argue that this claim, raised against them in their individual capacities, should be dismissed under the defense of qualified immunity.  The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)(*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).  Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "strict two-part test. " *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (*quoting Bowling v. Rector*, 584 F.3d 956, 964 (10th Cir. 2009)).  That is, "[t]he plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct . . . ".  *Id.*

Defendants do not contest that the law was clearly established that §1983 allows a claim for retaliation by an employer against an employee for reporting racial discrimination against a minority employee.  *See Patrick v. Miller,* 953 F.2d 1240, 1250 (10th Cir. 1992)(ruling that retaliatory actions against a white employee because of his efforts to defend the rights of racial minorities may violate the employee's rights as enumerated in §1981); *see also Hull v. Colorado Bd. of Governors of Colorado State University System,* 805 F.Supp.2d 1094, 1110 (D. Colo. 2011).  Rather, the individual Defendants assert that Plaintiff cannot establish they each acted to violate her constitutional rights.

I agree with Defendants that there is no evidence to support even an inference that Defendants Paul Natale and Heather Olson were aware of the alleged retaliatory termination; instead, the evidence is undisputed that they did not make any decision related to Plaintiff's employment.  Although Defendant Natale testified in his deposition that he expected she would

be terminated, the evidence is that he was not (and could not be) involved in the decision to terminate. [Doc # 58, Ex. H, pp. 39-42]  Moreover, I reject that the evidence shows that Defendant Olson participated in the decision because she assisted in the drafting of the termination letter in her role as the director of the Human Resources Department for the City. [Doc # 58, Ex D, pg. 225, Doc. #58, Ex. G, pp. 202-04]  As such, there is no basis for Plaintiff to establish that Defendants Natale and Olson were involved in any improper retaliation against her because of her complaints about the treatment of a minority co-worker under §1981.  Thus, Plaintiff cannot met the burden of establishing that Defendants Natale and Olson violated a constitutional or statutory right in order to defeat their qualified immunity defense.  *See Ramirez v. Department of Corrections*, Colo. 222 F.3d 1238, 1243 (10th Cir. 2000)(affirming the district court's determination that the complaint alleged sufficient conduct by the individual defendants to defeat their qualified immunity defense to the plaintiffs' racial discrimination claim under §1983); *see also Dockery v. Unified School Dist. No. 231,* 382 F.Supp.2d 1234, 1241-42 (D. Kan. 2005).

As to Defendants Gerald M. Flannery and Tom Acre, however, Plaintiff has met her burden to provide evidence to show that they were the decision makers who made the determination to terminate Plaintiff.  [Doc # 58, Ex. D, pp. 152-53, 222-27, Doc. #58, Ex. G, pp. 202-04].  As a result, Plaintiff has provided evidence to show personal involvement by Defendants Flannery and Acre sufficient to withstand their qualified immunity defense for retaliation pursuant to §1981.  *See Bruner-McMahon v. Hinshaw*, ___ F.Supp.2d ___,  2012 WL 138607 (D. Kan., Jan. 12, 2012)(holding that personal liability must be based on personal involvement in the alleged constitutional violation).

## V.  §1983 Claim of Equal Protection Violation Based on Gender

Plaintiff also makes a claim under 42 U.S.C. §1983, against the City and the individual

Defendants, that her right to equal protection was violated when she was discriminated against

based on her gender.   However, I have determined that Plaintiff cannot prove her Title VII claim

for gender discrimination, and the elements of a disparate treatment claim are the same whether

the claim is brought under §1983 or Title VII.  *See Maldonado v. City of Altus*, 433 F.3d 1294,

1307 (10th Cir. 2006)("[i]n disparate-treatment discrimination suits, the elements of a plaintiff's

case are the same whether that case is brought under §1981 or §1983 or Title VII"), *overruled on*

*other grounds, Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S.Ct. 2405, 165

L.Ed.2d 345 (2006); *see also Weeks v. McLaughlin,* 2011 WL 2631831 (D.Kan. 2011).  Because

Plaintiff does not argue there was a violation of the Equal Protection Clause separate from her

Title VII gender discrimination claim, her §1983 claim fails for the same reasons.  *Etsitty v. Utah*

*Transit Authority,* 502 F.3d 1215, 1227- 28 (10th Cir. 2007).

## VI.  First Amendment Claim

Plaintiff's final claim, also raised under §1983, is that her right to free speech was violated

by both the City and the individual Defendants on the basis that they retaliated against her for

speaking out against discrimination of herself and others.

The Supreme Court has noted that an employee has a "right to protest racial

discrimination [as] a matter inherently of public concern" when the "employee speaks out as a

citizen on a matter of general concern, not tied to a personal employment dispute, but arranges to

do so privately."  *Connick v. Myers*, 461 U.S. 138, 148 n. 8, 103 S.Ct. 1684, 75 L.Ed.2d 708

(1983).  However, in a freedom of speech retaliation claim, a citizen in government service must

accept certain limitations on his or her freedom.  *Brammer-Hoelter v. Twin Peaks Charter Academy,* 492 F.3d 1192, 1202 (10th Cir. 2007)(*quoting Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct.1951, 164 L.Ed.2d 689 (2006)).  At the same time, "[t]he First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens." *Id.*

Thus, the ultimate question is whether the employee speaks as a citizen, or as a government employee – an individual acting "in his or her professional capacity" – which results in no constitutional protection.  *Brammer-Hoelter v. Twin Peaks, supra,* 492 F.3d at 1202-03 (*quoting Garcetti v. Ceballos, supra*, 126 S.Ct. at 1960).  "[I]f an employee engages in speech during the course of performing an official duty and the speech reasonably contributes to or facilitates the employee's performance of the official duty, the speech is made pursuant to the employee's official duties."  *Id.* (*citing Williams v. Dallas Indep. Sch. Dist.*, 480 F.3d 689, 693 (5th Cir. 2007) (per curiam)).  However, not all speech that occurs at work is made pursuant to an employee's official duties.  *Id.* (*citing Garcetti v. Ceballos, supra*, 126 S.Ct. at 1959).  "Instead, we must take a practical view of all the facts and circumstances surrounding the speech and the employment relationship."  *Garcetti v. Ceballos, supra*, 126 S.Ct. at 1961; *see also Patrick v. Miller,* 953 F.2d 1240, 1247 (10th Cir. 1992)(speech touching on matters of public concern – as opposed to matters only of personal interest – is a question of law, not fact, and requires the court to consider "the content, form, and context of a given statement, as revealed by the whole record").

Defendants assert that the speech made by Plaintiff – specifically, her complaints of discrimination made during her employment with the City in her various reports and responses –

were made pursuant to her official duties and, thus, is not protected speech.  In response, Plaintiff argues that disputed issues fact demonstrate that her speech was not made pursuant to her official duties because a jury could conclude that Plaintiff was not expected to report discrimination.  I disagree.

First, it cannot be disputed that the documents in which Plaintiff asserted her allegations of discrimination were clearly related to her position as the director of the Economic Development Department, or regarded her own job performance, and, thus, were "generally consistent with the type of activities the employee was paid to do."  *Brammer-Hoelter v. Twin Peaks, supra*, 492 F.3d at 1202 (*quoting Green v. Board of County Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007)).  Moreover, I reject Plaintiff's argument that the City handbook – which contains a requirement, in the section entitled "Discrimination or Harassment" that supervisors report "possible sexual or other unlawful harassment" – does not require her to report discrimination or retaliation because it only requires that she report "harassment." [Doc # 46, Ex. E, pg. 17]  I likewise reject her assertion that it is disputed whether she was "actually excepted" to report discrimination based on other supervisors' failure to report the incidents she complained of.

I conclude that when the facts and circumstances are viewed as a whole and in a practical manner, Plaintiff's allegations of discrimination contained in her reports and responses constituted speech as a government employee acting in her professional capacity, not as a citizen speaking on a matter of public concern.  *See David v. City and County of Denver,* 101 F.3d 1344, 1355 (10th Cir. 1996)("[t]he court will also consider the motive of the speaker to learn if the speech was calculated to redress personal grievances [and therefore spoken as an employee] or to

address a broader public purpose [and therefore spoken as a citizen]")(*quoting Workman v. Jordan,* 32 F.3d 475, 483 (10th Cir. 1994)).  As a result, summary judgment enters in favor of Defendants, and against Plaintiff, on her §1983 claim for violation of her right to free speech.


ACCORDINGLY, I GRANT IN PART and DENY IN PART  Defendants' Motion & Brief in Support of Summary Judgment [**Doc #46**] as follows:

1) I DENY the motion as to Plaintiff's Title VII Claim for Retaliation against the City;

2) I DENY the motion as to Plaintiff's §1981 Claim for Retaliation against the City, and Defendants Gerald M. Flannery and Tom Acre, in their individual capacities;

3) I GRANT the motion as to Plaintiff's remaining claims and, as such, I enter summary judgment in favor of Defendants on those claims; and

4) I DISMISS Defendants Paul Natale and Heather Olson (Spenser) as parties in this case as no claims remaining pending against them.


Dated: May ___1___, 2012 in Denver, Colorado.


BY THE COURT:


    s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE

26